JULIA M. JAYNE (SBN 202753)
JAYNE LAW GROUP, P.C.
803 Hearst Avenue
Berkeley, CA 94710
Phone: (415) 623-3600
E-Mail: julia@jaynelawgroup.com

PAUL W. VERNER (Pro Hac Vice)
VERNER SIMON
30 Wall Street, 8th Floor
New York, New York 10005
Phone: (212) 502-5500
E-Mail: pwverner@vernerlaw.com

CARLOS F. ORTIZ (Pro Hac Vice)
BAKER HOSTETLER
45 Rockefeller Plaza
New York, NY 10111-0100
Phone: (212)589-4676
E-Mail: cortiz@bakerlaw.com

DANIEL OLMOS (SBN 235319)
NOLAN BARTON OLMOS & LUCIANO, LLP
600 University Avenue
Palo Alto, CA 94301
Phone: (650) 326-2980
E-Mail: dolmos@nbo.law

*Attorneys for Defendant*
ALIAKSANDR KLIMENKA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALIAKSANDR KLIMENKA,<br><br>Defendant. | Case No. 3:22-cr-00256-SI<br><br>DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO THE MOTION TO COMPEL DISCOVERY;<br><br>Date:        December 5, 2025<br>Time:       11:00 a.m.<br>Location:  Courtroom 1<br><br>Before the Honorable Susan Illston<br>United States District Judge |

# TABLE OF CONTENTS

ARGUMENT IN REPLY ..................................................................................................3

    I.     The government mischaracterizes the meet-and-confer process and the defense's good faith efforts. .................................................................................. 5

    II.    Mr. Klimenka has made a sufficient showing of materiality because the materials tend to support the defense, impeach the prosecution's evidence and potential witnesses, and call into question the thoroughness and good faith of the investigation against Mr. Klimenka. .................................................... 6

    III.   Disclosing materials that SA Alford already reviewed, assessed, and relied upon to draft his memorandum does not pose an insurmountable burden. ......... 11

    IV.   The government's description of "gratuitous" *Brady* orders conflicts with current law. ................................................................................................... 12

CONCLUSION ...............................................................................................................13

009970.014309\4916-7489-9580.1

# TABLE OF AUTHORITIES

**Cases**

*Giglio v. United States*, 405 U.S. 150 (1972) ..................................................................................10

*Kyles v. Whitley*, 514 U.S. 419 (1995)..............................................................................................10

*Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859 (N.D. Cal. 2012) .........................................10

*United States v. Powell*, 2022 WL 62909 (N.D. Cal. Jan. 6, 2022)..................................................10

*Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) ...............................................................................9

**ARGUMENT IN REPLY**

Mr. Klimenka's Motion to Compel involves a straightforward set of facts that the government either ignores or downplays in its opposition.

- On May 2, 2025, IRS Special Agent ("SA") Gary Alford alerted defense counsel that he acquired and possessed "exculpatory and/or impeachment evidence" favorable to Mr. Klimenka from his own personal involvement in the investigation of the Mt. Gox hack and the owners, operators, and administrators of BTC-e.[1]  Ex. F at 5.  According to SA Alford, "[s]ubstantially all the relevant records to be potentially provided are in electronic format. As such, it will not be a relatively heavy lift to assemble the relevant records."  Ex. F at 3.

- Over the next five months, defense counsel and the government engaged in a meet-and-confer process and exchanged numerous discovery letters related to SA Alford's outreach.  Exs. A-E to Mot. to Compel.

- The government ultimately produced a 41-page memorandum written by SA Alford and 30 documents from the SDNY investigation.

- The government thereafter refused to disclose or inquire into any additional exculpatory information from the SDNY investigation that formed SA Alford's conclusions, last writing to defense counsel on September 16, 2025.  *See id.*

- Defense counsel filed the instant Motion to Compel on October 31, 2025, because of the government's failure to provide additional information despite being on notice for five months, and despite Mr. Klimenka's trial being previously scheduled for October 2025 and then February 2026.  *See* ECF No. 157-1.

Despite the foregoing, the government continues to fail to comply with its *Brady* obligations. *See generally* Oppo., ECF No. 168.  As set forth below, the government has mischaracterized the parties' meet-and-confer efforts on this issue; incorrectly asserts that Mr. Klimenka has

---

[1] SA Alford is a respected and experienced agent who is considered by many to be the driving force behind the Silk Road investigation.  Indeed, numerous national news agencies have featured him and his work in publications.  *See, e.g.*, Nathaniel Popper, The Tax Sleuth Who Took Down a Drug Lord, N.Y. Times (Dec. 25, 2015), https://www.nytimes.com/2015/12/27/business/dealbook/the-unsung-tax-agent-who-put-a-face-on-the-silk-road.html; Hank Tucker, IRS Agent Who Took Down 'Silk Road' Turns His Attention to Recreational Bitcoin Investors, Forbes (last updated June 14, 2019), https://www.forbes.com/sites/hanktucker/2019/06/13/irs-agent-who-took-down-silk-road-turns-his-attention-to-recreational-bitcoin-investors/; Caroline Sommers and Emily Bernstein, Inside the FBI takedown of the mastermind behind website offering drugs, guns and murders for hire, CBS News (Nov. 10, 2020), https://www.cbsnews.com/news/ross-ulbricht-dread-pirate-roberts-silk-road-fbi/.

failed to make a prima facie showing of materiality; neglects to address one of Mr. Klimenka's theories of materiality; improperly attempts to reframe plainly exculpatory material already produced; and, for the first time, asserts that it would be too burdensome for it to work with another Department of Justice office to fulfill its *Brady* obligations—an assertion that directly contradicts SA Alford's own email.

Accordingly, for the reasons stated below and previously in Mr. Klimenka's Motion to Compel, ECF No. 157, the Court should grant Mr. Klimenka's Motion to compel.

I. **The government mischaracterizes the meet-and-confer process and the defense's good faith efforts.**

The government contends that Mr. Klimenka "prematurely moves the Court to compel discovery," notwithstanding the defense's extensive and documented efforts to meet and confer in good faith to obtain the requested materials without court intervention. Oppo. at 5:4-5. On May 2, 2025, SA Alford—and not the NDCA prosecution team—informed a member of Mr. Klimenka's defense team that "it was [SA Alford's] obligation to notify the Klimenka defense team" of the "exculpatory and/or impeachment evidence" he reviewed in connection with the SDNY investigation of BTC-e. *See* Ex. F at 5. Thereafter, on May 13, 2025, the defense notified the NDCA prosecution team of this disclosure and sought further information about the referenced exculpatory material.

On June 30, 2025, the government sent a letter to the defense stating that it had reviewed a "set of materials" from the SDNY case and would be making several disclosures based on that review. *See* Ex. A to Mot. to Compel. Two weeks later, on July 14, 2025, the defense renewed its request under Rule 16, *Brady*/*Giglio*, and *Jencks* for discovery, and requested all records forming the basis for SA Alford's conclusions that: (1) the "whole operation" of BTC-e was run by three individuals who are not Mr. Klimenka, and (2) "only VERNER had root access to the BTC-e server[.]" *See* Ex. B to Mot. to Compel. Two weeks later, the government responded by letter on July 26, 2025, declining to produce the requested materials. *See* Ex. C to Mot. to Compel.

On August 1, 2025, the government disclosed SA Alford's memorandum, and the parties met and conferred on August 11, 2025. After reviewing SA Alford's 41-page memorandum, the defense, on August 28, 2025, provided a detailed follow-up letter identifying 46 specific discovery requests for the underlying materials cited and expressly relied upon by SA Alford in making certain conclusions in the memorandum. *See* Ex. D to Mot. to Compel. The government replied by letter on September 16, 2025, denying defense counsel's request for the underlying materials and instead requesting further justification as to their relevance and discoverability. *See* Ex. E to Mot. to Compel. Of note, at this time, the NDCA prosecution team was in possession of the email correspondence between SA Alford and the defense team wherein he, an experienced and nationally recognized expert in digital asset investigations, characterized the information defense counsel was seeking as potentially exculpatory. It is difficult to imagine a clearer justification for defense counsel's request and yet, the NDCA prosecution requested one.

Contrary to the government's assertion that the defense is "more interested in manufacturing discovery disputes than actually obtaining evidence," the record demonstrates a sustained, diligent, and cooperative effort by the defense over nearly six months to obtain materials that counsel, in good faith, reasonably believed to be plainly exculpatory and impeachment evidence through the meet-and-confer process. Those efforts were met with repeated refusals over a five-month period, as well as requests for information that should have been readily apparent to the experienced members of the NDCA prosecution team. With the then-scheduled trial date rapidly approaching, the defense had no choice but to seek the Court's intervention to protect Mr. Klimenka's constitutional right to a fair trial.

**II.    Mr. Klimenka has made a sufficient showing of materiality because the materials tend to support the defense, impeach the prosecution's evidence and potential witnesses, and call into question the thoroughness and good faith of the investigation against Mr. Klimenka.**

The SDNY investigation into the activities of BTC-e and its operators resulted in a conclusion by SA Alford that Mr. Klimenka was not involved in BTC-e's operation, as alleged

in the indictment, and to the contrary, identified other individuals who were. Contrary to the government's characterization, this was not merely an investigation into the Mt. Gox hack. Oppo. at 6. The SDNY investigation was a comprehensive effort—using advanced tracing tools and forensic analysis—to determine who operated, administered, developed, and owned BTC-e dating back to 2011. Only by identifying those individuals could investigators begin to assess responsibility for the Mt. Gox theft.

As part of that nationwide effort, it appears that SA Alford, SA Gambaryan, and others devoted extensive resources to identifying every IP address, email account, phone number, and alias associated with anyone who might have exercised administrative-level control or access to BTC-e. That investigation, reflected in part in SA Alford's memorandum, identified multiple individuals, none of whom was Mr. Klimenka.

The government's self-serving assertion that information obtained from the seizure of Mr. Vinnik's devices in 2017 renders SA Alford's conclusion inaccurate should not be dispositive as to whether defense counsel is entitled to receive materials that formed the basis of the exculpatory conclusion in his memorandum. At most—and as the government concedes—that information suggests only that the government found that Mr. Klimenka "engage[d]" with Vinnik and others. Oppo. at 8. But engaging, communicating, or providing services is a far cry from operating a major cryptocurrency exchange—which, if true, would have been noted by SA Alford and his colleagues.

For these reasons, the conclusions set forth in SA Alford's memorandum, including the omission of Mr. Klimenka as a suspect, are plainly exculpatory. The defense, therefore, seeks disclosure of the underlying investigative materials supporting those conclusions.

Incredibly, the government appears to claim throughout its response that it fails to understand the defense's reasoning for the production of the requested materials. Oppo. at 14:20-21. To be clear, any facts uncovered in the course of the SDNY investigation into BTC-e resulting in their conclusion that Mr. Klimenka was not involved in its operation are clearly relevant. *See* Mot. to Compel at 1:7-12. These facts support the defense against the central

allegation that Mr. Klimenka controlled BTC-e or that he was even an "administrator" with full access to BTC-e.

The government, instead, continues to downplay (without investigation) that other exculpatory evidence exists, and even seemingly denies that the information provided thus far is exculpatory. *See, e.g.*, Ex. A to Mot. to Compel at 2 ("[W]e are not conceding the relevance, admissibility, or use of this information at trial. Nor are we conceding that disclosure is required under *Brady* or otherwise."); Oppo. at 7:21-8:2 (stating that "[t]he bulk of the materials identified by SA Alford were not exculpatory and may be the result of a fundamental misunderstanding by [him]" and that "the government turned these materials over to defense out of an abundance of caution"), 10:7 (stating that the Alford memo is "not exculpatory as to Klimenka"), 14:15-18 (stating that SA Alford is "mistaken . . . that the SDNY case file contains information that is exculpatory or relevant and that is not already part of the NDCA investigative file"), 16:3-21 (stating that SA Gambaryan's message that "no one else ran BTC-e" other than Vinnik, Bilyuchenko, and Dev is "poorly worded" and only "exculpatory on its face").[2]

The government is well aware that the defense was alerted to exculpatory material in the SDNY investigation by an experienced, respected agent who investigated BTC-e and money laundering allegedly committed by two of Mr. Klimenka's alleged co-conspirators during the same time Mr. Klimenka allegedly conspired to commit money laundering. Indeed, the SDNY indictment expressly charges Verner and Bilyuchenko with conspiracy to commit money laundering under 18 U.S.C. § 1956(h) (one of the same charges Mr. Klimenka faces), and expressly found that those two operated BTC-e. *See* Indictment ¶¶ 11-12, 13-14, *United States v. Verner and Bilyuchenko*, No. 19-cr-936 (S.D.N.Y. Dec. 30, 2019), ECF No. 3; Oppo. at 7:4-5

---

[2] The government also improperly asserts that SA Gambaryan's message to SA Alford "does not indicate that there is further discoverable information in the SDNY file" because KLIMENKA-00153698 states that "KLAMENKO" ran BTC-e. Oppo. at 8:25-9:3, 16:12-21. This document was authored by SA Alexandra Bryant, not SA Gambaryan. It is wholly realistic that SA Gambaryan disagreed with SA Bryant's conclusions, that she was mistaken, and/or that he relied on different materials to reach his conclusion that three individuals not named Aliaksandr Klimenka operated BTC-e.

("BTC-e is Exchange-1.  The SDNY case yielded evidence that Verner and Bilyuchenko created and operated BTC-e.").

Thus, SA Alford's conclusions about the individuals operating BTC-e and with access to the BTC-e server are plainly exculpatory, and the materials supporting those conclusions are material and critical to his defense.  As Mr. Klimenka noted, the SDNY memorandum identified *people other than Mr. Klimenka* as the people responsible for BTC-e, and evidence pointing to other suspects is "classic *Brady* material."  *See* Mot. to Compel at 8:13-18 (quoting *Williams v. Ryan*, 623 F.3d 1258, 1265 (9th Cir. 2010)).  The defense's theory is simple: the underlying materials in the SDNY investigation caused a trusted investigator on the SDNY team to reach exculpatory conclusions about Mr. Klimenka, so those materials support the defense and must be disclosed under *Brady*.  Whether those underlying materials are ultimately exculpatory is not Mr. Klimenka's burden.  The defense, however, is entitled to receive them and incorporate them in its case.

The government also misstates Mr. Klimenka's theory, incorrectly describing it as a defense suggestion that "the *lack of focus* on Mr. Klimenka in the SDNY investigation" makes this information discoverable.  Oppo. at 15:16-18 (italics added).  The issue is not the lack of "focus" on Mr. Klimenka, it is the lack of *evidence* against him in an investigation that plainly was focused on identifying the operators of BTC-e.  The reason the SDNY investigation never "focused" on Mr. Klimenka is because investigators apparently never discovered evidence that called for it, despite concentrated efforts to identify the owners and key operators.  It is difficult to imagine that if the investigators uncovered evidence regarding Mr. Klimenka, they would have simply ignored it and left him uncharged.  Likewise, the government notes that the lack of references to Mr. Klimenka in the SDNY case file "simply reflect that Klimenka was not a target in SDNY's" investigation.  Oppo. at 15:19-20.  Again, had the SDNY investigation discovered anything connecting Mr. Klimenka or any of his companies to money laundering through BTC-e, he would have become a target.

The government "believes" that the Gambaryan chat was a "product of imprecise wording in a casual conversation" that has now been misinterpreted by the defense. Oppo. at 5:16-17. The government's belief or interpretation—contradicted by the plain language in the chat—should not be the deciding factor as to relevance of the evidence and whether it constitutes *Brady* material. The Gambaryan communication clearly extends beyond a discussion of Wex.[3]

Mr. Klimenka explained another theory of discoverability in the motion which the government neglected to address: The underlying materials allow the defense to attack the thoroughness and good faith of the NDCA investigation, so the materials are exculpatory under *Brady* as explained in *Kyles v. Whitley*, 514 U.S. 419, 445 (1995). Mot. to Compel at 9. The government's opposition does not mention or respond to this argument.[4] As such, the Court should deem the government's lack of response as a waiver to Mr. Klimenka's argument on this point. *United States v. Powell*, 2022 WL 62909, at *2 (N.D. Cal. Jan. 6, 2022) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." (quoting *Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859, 869 (N.D. Cal. 2012))).

For these reasons, Mr. Klimenka respectfully asks the Court to order the government to produce evidence underlying SA Alford's memorandum. The conclusions in the memorandum regarding the owners, operators, developers and administrators of BTC-e and their access to the BTC-e server are plainly exculpatory.

---

[3] Moreover, the "source" cited by the government is an individual alleged to have become involved with Wex only after BTC-e was shut down, and thus had neither the reason nor the opportunity to know who operated BTC-e in prior years. In any event, that individual's uncorroborated opinion does not undermine the defense theory, nor does it diminish the plainly exculpatory nature of the investigative findings reached by Gambaryan and Alford.

[4] The materials further allow the defense to impeach the government's testifying agents at trial on this issue. *See* Mot. to Compel at 6:27-28 ("The *Brady* duty also extends to evidence that would impeach the credibility of a key witness." (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972))).

### III. Disclosing materials that SA Alford already reviewed, assessed, and relied upon to draft his memorandum does not pose an insurmountable burden.

The government claims for the first time that "[c]omplying with the defense request would be unduly burdensome," take "extensive work" and "forc[e] the government to expend significant limited personnel resources to review voluminous materials from the SDNY case file." Oppo. at 17:174-18:16. There is simply no basis for this statement, and it contradicts the plain language of SA Alford's email.

The government advances this claim while at the same time acknowledging that SDNY is willing and able to "assemble materials and make them available to the NDCA prosecution team for inspection." Oppo. at 18:2-3. It additionally notes that it "is in the process of acquiring" additional records from SDNY, and that it "has provided additional Klimenka identifiers to SDNY and requested that they determine whether there are any additional references in their case file" pertinent to Mr. Klimenka. *Id.* at 7, n.2; 17:10.

Mr. Klimenka's request pertains directly to evidence and records used by SA Alford himself to reach his conclusions that he possessed exculpatory and impeachment evidence. Contrary to the government's assertion, SA Alford wrote to defense counsel that "all the relevant records to be potentially provided are in electronic format. As such *it will not be a relatively heavy lift to assemble the relevant records. I want to be as forthcoming as possible*." *See* Ex. F at 3 (emphasis added). In the express words of the agent, this will not be a heavy lift.

Thus, the government's present assertion that it is too time consuming and cumbersome to produce additional exculpatory information is baseless. The government is presently coordinating with SDNY to obtain additional records. The investigating agent who alerted defense counsel that the government possessed exculpatory and impeachment evidence not previously disclosed has specifically stated that the collection of the materials the defense seeks will not be difficult. The government has now been aware of SA Alford's outreach and determination *for over six months*. Rather than penning dismissive letters that downplayed the intrinsically relevant value of an agent's assertion that he possesses exculpatory and

impeachment evidence and refusing to produce additional documents, the government could have long begun a proper inquiry into Mr. Klimenka's requests. It chose not to, and instead has opted to throw its hands in the air and say "this is too difficult."

More fundamentally, the government's claims about the burdens of reviewing the materials from the SDNY investigation raises an additional concern. Despite apparently not even reviewing the underlying materials Mr. Klimenka seeks, the NDCA team is certain that there is no additional *Brady* material. Oppo. at 14:15-18 (stating that SA Alford is "mistaken" that the case file he helped form "contains information that is exculpatory or relevant"). It is simply baffling for the government to assert anything about the exculpatory value of materials that it has not yet reviewed.

Mr. Klimenka is not requesting that the Department of Justice interact with and obtain documents from a government agency with which it rarely coordinates with. He is not making a limitless request for raw-format data across several agencies. Oppo. at 18:4-8. He is requesting that one Department of Justice office properly work with and obtain additional *Brady* material from another Department of Justice office that performed a parallel investigation. *See* Mot. to Compel at 2:12-15 (seeking "the materials upon which SA Alford relied when forming his conclusions about who controlled BTC-e"). He seeks *Brady* material that led a highly revered agent to alert defense counsel that he had a "fiduciary duty" and "obligation" to inform defense counsel of "exculpatory and/or impeachment evidence" that he possesses. Ex. F at 5. The government's newfound assertion that complying with its duties under *Brady* is unduly burdensome, despite being on notice for over six months and never once raising this "burden" as a reason to not produce evidence, is simply unacceptable. *See* Exs. A-E to Mot. to Compel.

**IV.    The government's description of "gratuitous" *Brady* orders conflicts with current law.**

Citing decisions from 2011 and the early 1990s, the government contends that court orders to comply with *Brady* are "[g]ratuitous" because "there is no need for a court order" for *Brady* compliance. Oppo. at 18. It is true that *Brady* is self-executing, yet, here, it was SA

Alford, on his own volition—and not the Department of Justice—who is the reason why the defense even has *knowledge* of any exculpatory information from the SDNY investigation. Had SA Alford not contacted counsel, Mr. Klimenka would have proceeded to trial without evidence deemed exculpatory by an agent who investigated the very exchange that Mr. Klimenka is alleged to be an owner, operator, and/or administrator of.

This situation is exactly why court orders to comply with *Brady* have been required in every federal criminal case since the passage of the Due Process Protections Act in 2020. Federal Rule of Criminal Procedure 5(f)(1) now requires "an oral and written order" in "all criminal proceedings" confirming the *Brady* obligations and the consequences of violating the order for compliance. Courts must enter those oral and written orders at "the first scheduled court date when both prosecutor and defense counsel are present[.]" Rule 5(f)(1). That first court date in Mr. Klimenka's case was January 29, 2024, and Mr. Klimenka's current attorneys were not yet involved in the case and do not know if the Court entered an oral order under Rule 5(f)(1). Further, the docket does not reflect any "written order," and the defense respectfully requests that the Court enter a written order in compliance with Rule 5(f)(1).

## CONCLUSION

For the foregoing reasons and those in his Motion to Compel, Mr. Klimenka respectfully asks the Court to issue an order compelling the government to conduct a diligent search for and disclose all *Brady* material, and to disclose all the materials listed in defense counsel's letter to the government dated August 28, 2025.

Respectfully submitted,

DATED: November 26, 2025   NOLAN BARTON OLMOS & LUCIANO, LLP


 /s/ Daniel B. Olmos
Daniel B. Olmos
Attorney for Defendant Aliaksandr Klimenka